IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Civil No. 2019-96 |
| vs. | ) |
| ANTHONY G. INGRAO & DENIS BAY PROPERTIES, LLC, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

This matter is before the Court on the defendants Anthony G. Ingrao and Denis Bay Properties, LLC's Motion for Determination of Disputed Claim of Privilege. [ECF 221]. Defendants wish to obtain a ruling that three documents plaintiff United States of America produced during discovery in this matter—the "Claim Report," the "Concurrence Memo," and the "Claim Referral"—are not shielded from disclosure or use by the attorney client privilege or work-product protection.[1] The United States opposes the motion [ECF 236] and defendants filed a reply [ECF 239]. The Court held a hearing on the motion on June 18, 2024, and the motion is ripe for decision.

### I.    BACKGROUND AND PROCEDURAL POSTURE

The United States sued defendants under the System Unit Resource Protection Act ("SURPA"), 54 U.S.C. §§ 100721, *et seq.*, seeking damages and response costs on behalf of the Secretary of the United States Department of the Interior ("DOI") and the National Park Service

---

[1] [ECF 222] at 2–3. The United States produced these documents in discovery as Bates numbers NPSING0074944, NPSING0080410, and NPSING0080409, respectively. *Id.* at 9; *see* [ECFs 228-1, 228-2, 228-3].

("NPS") stemming from injuries defendants allegedly caused to National Park property while constructing a residence. [ECF 1].

NPS has developed policy that includes step by step guidance to document and develop SURPA claims. Two documents of particular importance in that process are the NPS Director's Order No. 14 and the Damage Assessment and Restoration Handbook. *See* [ECF 222-1] at 2 ("This Director's Order (DO) and its accompanying Handbook (Guidance for Implementing Damage Assessment and Restoration Activities in the National Park Service) expands on the provisions of 4.1.6 (Compensation for Injury to Natural Resources) and 5.3.1.3 (Compensation for Damages), in the NPS *Management Policies*."); [ECF 222-2] (Damage Assessment and Restoration Handbook); [ECF 236-1] at 4 (the Handbook and DO provide "procedures and information guidelines that are established into [NPS'] current civil enforcement policy"). The three documents in issue are created in the course of developing and pursuing a SURPA claim. [ECF 236] at 2 (the documents include "NPS staff's description of injuries [and] preliminary analysis of restoration actions necessary to address the injuries").

As trial approached, the parties filed trial briefs on March 11, 2024. [ECFs 201, 204]. Defendants attached the Claim Report as an exhibit to their trial brief. [ECF 204-2]. The next day, on March 12, plaintiff's counsel sent defendants a copy of a June 27, 2022 letter purporting to claw back the Claim Report as being subject to a claim of privilege. [ECF 222] at 11; [ECF 222-6]; *see* [ECF 223-1]. Although defendants immediately took steps to protect the document from public view and to remove reference to it from their trial brief, at a March 18, 2024, pretrial conference, the defendants notified the District Court they would challenge the plaintiff's assertion of privilege. [ECF 224-1] at 14 (Hrg. Tr. March 18, 2024).

Thereafter, the parties and this Court discussed the matter and the instant motion followed. Following initial briefing, on May 6, 2024, pursuant to Federal Rule of Civil Procedure 26(b)(5), the Court ordered defendants to submit the challenged documents under seal to the Court for inspection. [ECF 225]. Defendants did so the next day. [ECF 228]. Soon thereafter, the United States sought an opportunity to file a substantive response to the motion, having previously opted to oppose it only on procedural grounds. [ECF 229]. By Order dated May 14, 2024, the Court permitted plaintiff to submit its position on the privilege issues. [ECF 233]; *see* [ECF 236] (United States' memorandum).

## II.   LEGAL STANDARDS

Where a claim of privilege is raised, the party asserting a privilege has the burden of establishing such privilege. *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990) ("With respect to the question of which party carries the burden of proof in establishing the privilege's applicability, it is clear, in this Circuit, that a party who asserts a privilege has the burden of proving its existence and applicability."); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1264 (3d Cir. 1990).

### A.   Attorney-Client Privilege

> The attorney-client privilege attaches to "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 359 (quoting Restatement (Third) of the Law Governing Lawyers § 70).

*Trush v. City of Philadelphia*, 2023 WL 7646527, at *1 (E.D. Pa. Nov. 14, 2023); *see also Rockwell*

*USA v. Ingrao, et al.*
Civil No. 2019-96
Page 4

*Int'l*, 897 F.2d at 1264 (discussing the required elements for a claim of privilege).

> The attorney-client privilege promotes the broad public interest in the observance of law and administration of justice by encouraging "full and frank communication" between attorneys and their clients. *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1423 (3d Cir.1991). Because the privilege also obstructs the truth-finding process, however, it is construed narrowly and "'protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *Id.* at 1423–24 (quoting *Fisher v. United States,* 425 U.S. 391, 403 (1976)) (emphasis in original); *see In re Grand Jury Investigation,* 599 F.2d 1224, 1235 (3d Cir.1979).

*Claude P. Bamberger Int'l Inc. v. Rohm & Haas Co.*, 1997 WL 33762249, at *2 (D.N.J. Dec. 29, 1997). Further, "the protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing." *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 862 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)). "Communications between a government agency and government agency counsel, as well as communications between a government agency and attorneys from the Department of Justice representing the government agency in litigation, are included within the ambit of the attorney-client privilege." *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 495 (2009). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390.

    B. Work Product

Work product protection is embodied in Federal Rule of Civil Procedure 26(b)(3), which provides:

> (A) *Documents and tangible things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its

> representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3). The test for whether a particular document was prepared "in anticipation of litigation" is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) (citation omitted). Although work product protection is broader than attorney-client privilege, it is recognized as "qualified:"

> [T]he level of need and hardship required for discovery depends on whether the work product is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not. Whereas factual work product can be discovered solely upon a showing of substantial need and undue hardship, mental process work product is afforded even greater, nearly absolute, protection.

*In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016).

### III.    DISCUSSION

It is undisputed that the documents at issue were prepared by a non-lawyer, Karen Battle Sanborn, the National Park Service's Damage Assessment Case Officer for SURPA claims. [ECF

236] at 2–3.[2]  The Claim Report, dated January 5, 2016, presents the most difficult in terms of analysis with respect to the privilege claims, as on its face it neither asks for legal assistance nor reflects any legal advice given.  The Claim Report appears to contain only a factual assessment of damage components and the estimated costs to replace, restore, or obtain equivalent resources. [ECF 228-1].  Further, there is nothing in the Claim Report to suggest that it contains mental impressions or opinions of attorneys either, so to the extent it might be considered work product, any protection may be qualified.  The Court will therefore focus the majority of this opinion on the Claim Report.[3]

According to defendants, the Claim Report "w[as] prepared by NPS personnel, as required to fulfill NPS' statutory duties under SURPA."  [ECF 222] at 12.  Additionally, the Claim Report "simply reflects factual information compiled by NPS personnel," and "does not contain or reflect the mental impressions, legal theories or opinions of counsel."  *Id.* at 15.  Defendants contend that while all three documents "may relate to litigation, they are routine reports required under

---

[2] Ms. Battle Sanborn has been the only Damage Assessment Case Officer for the NPS under SURPA and its predecessor statute for most of the period since 2001.  [ECF 236-1] at 2 (Battle Sanborn Decl.).  She testified that she deals with between 200 and 500 SURPA matters each year.

[3] The Court finds the Concurrence Memo and the Claim Referral meet the requirements for protection as they were more obviously generated with the primary purpose of seeking legal advice.  The Claim Referral, though only in draft form, [ECF 228-3], is exactly what it purports to be:  A communication from a client, NPS, to Patricia Cortelyou-Hamilton, an attorney with the Solicitor's Office, requesting legal assistance, including possible referral to the Department of Justice ("DOJ").  The Office of the Solicitor acts as legal counsel for NPS.  *Evans v. U.S. Dept. of Interior*, 135 F. Supp. 3d 799, 827 n.13 (N.D. Ind. 2015).  Ms. Battle Sanborn testified that there were no differences between the draft and final version of the Claim Referral, which itself would surely be privileged.  *See In re Lincoln Nat'l COI Litig.*, 2019 WL 7582777, at *5 (E.D. Pa. Dec. 5, 2019).  The Claim Referral is thus a protected attorney-client communication.

 The Concurrence Memo [228-2] likewise is subject to protection.  This memo is part of an internal NPS process required to be undertaken in order to seek legal assistance.  It refers to advice received from the Solicitor's Office and the DOJ, and is for the purpose of facilitating legal representation, as it asks the recipient to "advise the Solicitor of these findings" to begin settlement negotiations or refer the matter to DOJ for litigation.  *Trush*, 2023 WL 7646527, at *1 ("'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation.").

*USA v. Ingrao, et al.*
Civil No. 2019-96
Page 7

NPS policy." *Id.* at 15–16. Also, defendants argue that they have a substantial need for the information in the Claim Report that they cannot obtain elsewhere, primarily because discovery has closed. *Id.* at 16.

Plaintiff, on the other hand, claims that all three documents "were prepared to refer this case" to the DOJ to be litigated. [ECF 236] at 1. "NPS civil enforcement policy provides the step-by-step process for NPS to document and develop SURPA claims in anticipation of settlement or litigation," resulting in the preparation of what plaintiff characterizes as a "litigation referral package," which contains the three documents in issue here. *Id.* at 2.[4] Further, according to plaintiff, each document "was prepared with and/or reflects input from attorneys," and "would not have been prepared by NPS but for the prospect of settling or litigating" this case. *Id.* at 3. With respect to the Claim Report in particular, plaintiff asserts that an attorney from the Solicitor's Office "provided advice and legal guidance" in its preparation, and a DOJ attorney "had email communication and numerous calls discussing the details and analysis" of the claims, and the Claim Report incorporated her comments. *Id.* at 4. Finally, plaintiff posits that the Claim Report is work product because it "contains the DOI and DOJ attorneys' mental impressions, conclusions, opinions, and legal theories" concerning this case. *Id.* at 11–12.

In reply, defendants complain that plaintiff's assertions regarding legal advice and guidance lack specifics sufficient to support the privilege claims. [ECF 239] at 2–3. Plaintiff has failed to identify specific legal advice given or requests for same, according to defendants. *Id.* at 5. Ultimately, while defendants agree that discussions with attorneys may well be privileged, the "official documents" reflecting NPS' position here are not. *Id.* at 6. Defendants

---

[4] Much of plaintiff's argument is based on the Battle Sanborn Declaration, attached at [ECF 236-1].

reiterate their "substantial need" for the documents, which they say contain party admissions of NPS regarding the necessity of various restoration activities. *Id.* at 7–8.

Karen Battle Sanborn's testimony is critical to determine how to categorize the Claim Report. She explained that the SURPA process begins when NPS law enforcement contacts her about a matter, and they discuss which path to follow: criminal, civil administrative, or civil litigation. Injury assessments are done in both the administrative and litigation processes, but a litigation referral package is created only for litigation purposes. The "injury assessment" is the first step and is factual. Battle Sanborn stated she will then look at restoration options and the costs of those, which commonly get updated over time. Battle Sanborn testified that whether a decision is made to pursue administrative remedies or litigation is based primarily on the size of the injury and whether there are any complicated legal issues to address. She stated that approximately one to five percent of the SURPA matters take the litigation route, and that a claim report is prepared for about one percent of the cases. Here, Battle Sanborn testified, the size of the injury was quite large and there were complicated legal issues, such as those concerning property ownership and rights of way. She stated that she, along with the NPS Superintendent and the Solicitor's Office, "knew" they were going to refer this matter for litigation.

During the creation of the Claim Report, Battle Sanborn said she had calls with attorneys from the Solicitor's Office and the DOJ. She said she needed advice on legal issues regarding which components of restoration should be included in the Claim Report, and whether she could include a "placeholder" for lost services, the scope of which had not yet been calculated. She testified she could not have drafted the document without such legal advice.

On cross examination, Battle Sanborn agreed that the NPS Director's Order No. 14 and the Damage Assessment and Restoration Handbook are internal NPS guidance for the preparation of

*USA v. Ingrao, et al.*
Civil No. 2019-96
Page 9

the subject documents, and that the steps set out in those documents were followed here. She further testified that although the legal issues of ownership of the road, right of way, statutory interpretation, and the use of a placeholder for compensatory restoration were considered, these issues were not addressed specifically in the Claim Report, and that she included no legal analysis of them in the report. Further, while attorneys provided input on whether to include various items of injury, again, the Claim Report contains no legal analysis related to whether or why items were included or excluded.

Based on this testimony, upon the record to date, and on the applicable authorities, the Court finds that the Claim Report is not protected by attorney client privilege. The document primarily is a factual assessment of injury, and the restoration efforts required and associated costs to remedy that injury, as of the time it was prepared. It contains only facts and is not a "communication" made for the purpose of seeking legal advice. It was drafted by a non-lawyer and does not ask for legal assistance or specifically reflect legal advice given within its four corners.

The Claim Report does, however, upon deeper consideration, reflect certain legal input and was, according to Battle Sanborn's testimony, prepared in anticipation of litigation. *In re Grand Jury Proceedings*, 604 F.2d at 803 ("[I]n light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." (citation omitted)). As such, the Court finds that the Claim Report is subject to work product protection.

The Claim Report does not, however, on its face appear to reveal mental impressions, legal theories, or opinions of counsel. Thus, the protection from disclosure may be qualified. As discussed, Federal Rule of Civil Procedure 26(b)(3) provides that a party may obtain protected

*USA v. Ingrao, et al.*
Civil No. 2019-96
Page 10

work product materials if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3). The material in the Claim Report is likely relevant and thus discoverable as it represents a party's (NPS') assessment as of a point in time of the need (or lack thereof) for certain restoration efforts to mitigate the damage, and it relates to the defense of the matter.

With respect to the substantial need/hardship analysis, defendants argue that the Claim Report goes "to the heart of the substantive claims," and they have no alternate source for the information because discovery is closed.  [ECF 222] at 16.  They claim the documents "illustrate the vast gulf between NPS' primary restoration proposal and DOJ's demand," and constitute "party admissions contained in official, signed documents."  [ECF 239] at 7–8.  Defendants assert further that they were unaware of the claim of privilege until recently and could not have anticipated during the discovery period they would need additional discovery.  *Id.* at 8.[5]

Plaintiff suggests that depositions of witnesses would be the appropriate way to discover any non-privileged underlying facts, not disclosure of a privileged document.  [ECF 236] at 6 n.4. Plaintiff points out that here, however, discovery is closed.  *Id.* at 10.  Plaintiff contends "[d]efendants offer no extraordinary circumstances that prohibited prior or current counsel from seeking discovery of facts before the close of discovery in Plaintiff's June 27, 2022 privilege log documents."  *Id.* at 11.  Finally, plaintiff claims the privileged information in the Claim Report is not "definitive facts," but merely preliminary analyses, the underlying information for which has already been or could have been discovered during depositions already taken.  *Id.* at 12.

---

[5] See the Court's May 6, 2024, Order for a discussion of the events leading to defendants' privilege challenge after the close of discovery.  [ECF 225] at 1–4.

The Court concludes that although the Claim Report contains information that might be considered important to defendants' case, defendants have not shown they could not have tried to obtain the factual information in the Claim Report before the close of discovery. First, the report's author Battle Sanborn was deposed in October 2022, but prior counsel, who had received the Claim Report in discovery, did not seek to explore the contents of that document with her at that time. Further, though current counsel avers they could not have anticipated the need for additional discovery because they only recently became aware of the claim of privilege, this is a bit of a stretch. The document itself declares on the front page "Attorney Client Privilege" and "FOIA Exempt – Do not Release." [ECF 228-1]. Even if current counsel did not know until months after they took over the case that the document had been the subject of a "claw back" or was listed on plaintiff's privilege log, these phrases at the top of the document must have given defendants some notice of the document's potentially privileged nature. While discovery was still open, they were obligated to explore that possibility while they had the chance. The Court thus finds that defendants have not demonstrated undue hardship or overcome plaintiff's claim of work product protection with respect to the Claim Report.

## IV. CONCLUSION

The premises considered, it is ORDERED that defendants' Motion for Determination of Disputed Claim of Privilege [ECF 221] is GRANTED.

It is further ORDERED, based upon the foregoing discussion and the record in this case, that the Concurrence Memo and the Claim Referral are protected from disclosure by the attorney client privilege.

*USA v. Ingrao, et al.*
Civil No. 2019-96
Page 12

      It is further ORDERED that the Claim Report is protected from disclosure by the work product doctrine.

**Dated:** July 11, 2024                        S_____
                                                           **RUTH MILLER**
                                                           United States Magistrate Judge